373 So.2d 1346 (1979)
David D. CANGELOSI
v.
McINNIS PETERSON CHEVROLET, INC. and General Motors Corporation.
No. 12577.
Court of Appeal of Louisiana, First Circuit.
July 16, 1979.
*1347 Roy Cangelosi, Baton Rouge, of counsel, for plaintiff-appellee David D. Cangelosi.
Roland C. Kizer, Jr., Baton Rouge, of counsel, for defendant-appellant McInnis Peterson Chevrolet, Inc.
Henry Salassi, Jr., Baton Rouge, of counsel for defendant-appellant General Motors Corp.
Before CHIASSON, EDWARDS, PONDER, LEAR and COLE, JJ.
CHIASSON, Judge.
This is a redhibition suit to rescind the sale of a new 1976 Chevrolet Corvette and to recover the purchase price, interest and attorney's fees. The trial court rescinded the sale and granted judgment in favor of plaintiff, David D. Cangelosi, against the defendants, McInnis Peterson Chevrolet, Inc. (McPete) and General Motors Corporation (GMC), in the sum of $10,629.71 plus $1,000.00 for attorney's fees. Additionally, the trial court rendered judgment in favor of McPete on its third party demand against GMC in the sum of $11,629.71 plus attorney's fees of $1,000.00. From this judgment, GMC and McPete appealed. Plaintiff answered the appeal seeking an increase in the awards of interest and attorney's fees.
In August of 1976, David D. Cangelosi purchased a new Chevrolet Corvette, Model No. 1YZ37, Serial Number 1237L6S442976. The only defects Cangelosi knew of when he purchased the car were that the car would have to have its doors painted and a broken tachometer would have to be replaced. Both of these items were taken care of by McPete.
From August of 1976 until May of 1977, a series of defects in the car appeared and Cangelosi took the car to the retailer, McPete, for repairs. These defects included windows that would not go up; rear window defroster that did not work; interior lights which remained illuminated when the doors were closed; exhaust manifold leaked; the rear end locked rendering the car inoperable; and the electrical system shorted out on two occasions. On the first occasion the car restarted and the electrical system again functioned, and on the second occasion the car would not start and had to be towed in.
All of these defects, except the manifold leak, were repaired by McPete.[1] Additionally, plaintiff alleges that the brakes completely failed on May 14, 1977 resulting in an accident. This defect led to the filing of this lawsuit.
The record discloses the following facts. Plaintiff's Corvette had been at McPete for a month and a half for the repair of the rear end. Plaintiff went on Friday, May 13, 1977, to pick up his car and found the rear end fixed but the exhaust manifold leaking. He was told to return the following Monday to have it repaired. Plaintiff left with the car and he and two friends drove to Cangelosi's camp at Lake Verret that evening. They were joined later by two other friends.
Early Saturday evening all five men left the camp to go to a restaurant to eat. Plaintiff, driving his Corvette, was accompanied by James H. Lewis. He was followed by the other three friends in another *1348 car. The cars were traveling on a hard surfaced road leading from the camp to the highway when plaintiff's car left the road while negotiating a right hand curve and struck a tree.
At trial plaintiff testified that he was traveling about 35-40 miles per hour when he approached a sharp curve in the road; that he applied his brakes, but the brake pedal went to the floor without resistance; and that he was unable to slow down sufficiently to negotiate the curve. He further testified that over the period of time he had the car, some nine months, more than one-half of the time it was being repaired. This is corroborated by other witnesses and is unrebutted.
James H. Lewis, the passenger in plaintiff's car, testified he was not observing plaintiff when the car was going through the curve, but that plaintiff said immediately after the accident that the brakes went out.
Two of the three occupants of the car following the Cangelosi car testified that immediately after the accident plaintiff told them the brakes went out. The third occupant did not testify because he was in the service at the time of the trial. Tommy Manno, the driver of the car following plaintiff, testified that he saw plaintiff's brake lights just as the cars were in the curve and then saw the car go off the road. Cangelosi and three of the men with him at the time of the accident testified that the road was examined for skid marks and none were found.
Marion Cangelosi, the appellee's father, testified that David had called him the night of the accident to tell him what happened. Marion Cangelosi stated that he was at McPete when David's car arrived and saw the car. He testified he spoke with the shop foreman at McPete at that time who told him that the car would have to be put on the rack and he would be called. Marion Cangelosi testified that he called the shop foreman and was told that the car would be fixed at McPete's expense. Marion Cangelosi also testified he spoke with a Mr. Spiller at McPete and obtained a car for David to drive while the Corvette was being repaired. Four days after this conversation with Mr. Spiller, Marion Cangelosi stated that an insurance company representative called him and told him that the Corvette would not be fixed; that it was not the fault of the insured. Marion Cangelosi again spoke with Mr. Spiller and told him that if McPete was not going to repair the car, then Cangelosi did not want the car back.
Defendants presented the testimony of Byron Whittington, service manager for McPete Chevrolet, and Howard Davis, a warranty consultant with the Chevrolet Motor Division, GMC, who was qualified as an expert in the field of automotive mechanics, particularly in the field of GMC products.
Both testified that the damage to the Corvette was as follows: The left front fender was nearly torn off; the wheel had been knocked off the frame; the control arm and wheel had been knocked back; and the left front brake line was pulled apart.
Both of these witnesses testified that there are two independent, totally separate hydraulic brake systems in a Corvette. One system controls the front wheels and another controls the back wheels and that one system works without the other. Both men also testified that they tested the brakes and the rear brakes were operating properly because they could not turn the rear wheels when the brakes were applied. They both testified that when they plugged the left front brake line and the brakes were applied, the front brakes operated.
Mr. Davis testified that the only conditions that would cause a sudden total loss of brakes were (1) if the linkage between the brake and brake pedal came off, and (2) if the master cylinder broke off. He stated that at the time he inspected the car (at least six months after the accident), these items were intact and if they were broken at the time of the accident, they would still be so.
*1349 Mr. Whittington testified that he had not spoken to either Marion or David Cangelosi about the Corvette. Mr. Davis testified he inspected the car with Mr. Whittington sometime after the lawsuit was filed. The lawsuit was filed on November 17, 1977.
The pertinent codal provisions are La.C.C. arts. 2520 and 2530, which provide:
Art. 2520:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Art. 2530:
"The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
We find that there was no manifest error on the part of the trial court in its finding that there was a brake failure on May 14, 1977, which was a redhibitory defect. The trial judge accepted the testimony of the appellee's witnesses and we find that he was not clearly wrong in this determination. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), Rehearing Denied (La. 1979).
In the instant case, McPete's shop foreman had particular knowledge of facts pertinent to the issue of a brake defect; McPete had control over this witness and the burden of proof had shifted to appellants to prove the brakes were not defective. Under these circumstances, we find that the failure to call the shop foreman creates a presumption that his testimony would be unfavorable to appellants. Tillman v. Canal Insurance Co., 305 So.2d 602 (La.App. 1st Cir. 1974) and Lowenburg v. Labor Pool of America, Inc., 296 So.2d 846 (La.App. 4th Cir. 1974).
Mr. Whittington and Mr. Davis inspected the car at least six months after the accident happened. Appellants, by Mr. Davis' testimony, were attempting to show that all possibilities of a brake failure as described by David Cangelosi were negated by their inspection of the car some six months later. Mr. Davis' testimony established that the brake failure could not be due to a defect in the hydraulic system and that the brake failure could have been caused only by a break in the linkage or the breaking off of the master cylinder. However, we do not know what condition the linkage between the brake and brake pedal or the master cylinder was in immediately after the accident. We do know that the shop foreman inspected the car immediately after the accident. To negate plaintiff's testimony it was incumbent on appellants to show the condition of the car immediately after the accident. The testimony of the shop foreman would have provided this information. The lack of his testimony leaves the record showing only the condition of the car at the time Davis and Whittington inspected it, at least six months after the accident. The trial court was therefore correct in rejecting Mr. Davis' testimony as to the condition of the linkage and master cylinder immediately following the accident.
The trial court found that the brake failure of May 14, 1977 was "the culmination of a series of unfortunate incidents involving this automobile." He found these items collectively formed the basis of Cangelosi's redhibitory action and rescinded the sale. We agree. We find the record supports this conclusion. Although all but one of the individual defects prior to the accident had been repaired, we find in the instant case that the pattern of repairs demonstrated by the evidence, David Cangelosi's unrebutted testimony that the car was in the shop being repaired more than half the time he owned it and the subsequent brake failure, shows that the car was defective and rendered its use so inconvenient and imperfect that it must be supposed that Cangelosi would not have purchased the car had he known this.
*1350 GMC has argued that the defects prior to the accident which were repaired cannot form the basis for a redhibitory action. We find that the frequency of the pattern of repairs coupled with the brake failure when considered together show that the Corvette failed to perform properly in the manner it was intended to perform under the conditions of normal use. We find the record provides sufficient evidence to support the presumption that had David Cangelosi known that the vehicle he purchased was going to have to be repaired because of defects so frequently that he had the use of the car for less than one-half of the time he owned it, he would not have purchased the car.
GMC argues that if Cangelosi is awarded interest on the loan he obtained to finance the purchase price of the Corvette that GMC should be awarded an equivalent credit for the buyer's use of the vehicle. There is no evidence in the record of the value of the use of the thing sold to the buyer. Counsel for GMC in brief urged that Cangelosi had the use of his vehicle for a significant portion, seven and one-half months, of the nine month period of ownership. Counsel for GMC at oral argument cited the amount of mileage Cangelosi had driven the car when he did have its use and argued that Cangelosi had substantial use of his automobile. None of these facts appear anywhere in the record. David Cangelosi's testimony was unrebutted that the Corvette over the period of time he owned the car was in the shop for repairs at least more than half the time that he had it. We find this argument by GMC to be without merit. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978).
David Cangelosi asked in his answer to the appeals for an increase in the award of attorney's fees and interest charges from the date of the judgment of the trial court until paid in full.
We award an additional $500.00 to Cangelosi's attorney for services performed in connection with this appeal. This amount is to be paid in the same manner as the other attorney's fees in the main demand and third party demand.
We cannot award additional interest charges as no evidence was presented as to this amount from the date of trial until paid.
For these reasons the judgment of the trial court is amended to add thereto the following:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, David D. Cangelosi, and against defendants, McInnis Peterson Chevrolet, Inc. and General Motors Corporation, in the sum of FIVE HUNDRED AND NO/100 ($500.00) DOLLARS attorney's fees for the appeal taken, and there is judgment herein in favor of third party plaintiff, McInnis Peterson Chevrolet, Inc., and against the third party defendant, General Motors Corporation, in the sum of FIVE HUNDRED AND NO/100 ($500.00) DOLLARS.
As thus amended and in all other respects the judgment of the trial court is affirmed. All costs of this appeal are taxed against appellants in the main demand and against GMC in the third party demand, to be paid in the same manner as the costs assessed in the lower court.
AMENDED AND AFFIRMED.
EDWARDS, J., dissents and assigns reasons.
EDWARDS, Judge, dissents.
The majority's treatment of this appeal as involving a question of the existence vel non of manifest error is, in my opinion, incorrect, because the proof in the record is insufficient to sustain an action for redhibition. I therefore dissent.
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect *1351 that it must be supposed that the buyer would not have purchased it had he known the vice. LSA-C.C. art. 2520.
A plaintiff in a redhibition suit bears the burden of proving that 1) the thing sold contained a hidden vice not apparent by ordinary inspection, 2) the vice existed at the time of sale, 3) the vendor did not advise him of the vice, 4) the vice rendered the thing unfit for use and 5) with respect to a good faith seller who did not know of the vice, that plaintiff has allowed him a reasonable opportunity to repair the problem. Purvis v. Statewide Trailer Sales, Inc., 339 So.2d 403 (La.App. 1st Cir. 1976).
However, the plaintiff need not prove the precise or underlying cause of the defect, so long as he shows that the thing contained a defect and that the defect existed at the time of the sale. Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660 (La.1975); Edelman Systems, Inc. v. Capitol GMC, Inc., 345 So.2d 99 (La.App. 1st Cir. 1977).
This suit was instituted alleging that the car contained numerous redhibitory defects, including all the malfunctions repaired by McPete as well as brake failure which allegedly caused the accident.
At trial Cangelosi testified regarding the various problems which he had encountered with the car. He stated that all the problems except the exhaust manifold leak and the damage occasioned by the alleged brake failure had been repaired successfully by McPete. Regarding the brake failure, Cangelosi testified that he had just left his camp at Lake Verret along with several friends to get dinner at a nearby restaurant, that he was driving on a curvy rural road, that he applied his brakes as he entered a right curve, but that he could not slow down sufficiently to negotiate the curve, and as a result, struck a tree. He stated that the collision was caused by a total brake failure.
Three of Cangelosi's companions testified at trial and each stated that Cangelosi complained of brake failure immediately after the accident. No other evidence was presented regarding the brake failure or any of the other alleged defects.
Defendants presented the testimony of two witnesses, Byron Whittington, the service manager at McPete, and Howard Davis, a warranty consultant with the Chevrolet Motor Division. Both witnesses testified that Cangelosi's car was equipped with separate, independently operating, front and rear brake systems. Additionally, both stated that they had personally tested the car's brakes after the accident, that the rear brakes were operating properly, and the front brakes, except for the front left brake line which was broken in the collision, also operated and would hold when the broken line was plugged.
The trial court resolved the issue of the existence vel non of a defect on the basis of the credibility of the witnesses and accepted the testimony of Cangelosi and his three friends that the brakes malfunctioned and that this failure was a redhibitory defect.
I would be hard pressed to find factually that Cangelosi's testimony together with the testimony of his three friends, which merely recounts Cangelosi's statements made immediately after the accident, is sufficient to establish the existence of a brake defect in light of the uncontradicted testimony of defendant's witnesses regarding the tests made on the brakes after the accident.
However, I do not base my dissent solely on the existence vel non of a brake failure since even assuming that Cangelosi did prove that the brakes failed, I cannot find (and the trial judge did not find) from all of the evidence in the record that Cangelosi met his burden of proving that either the brake failure or the exhaust manifold leak was a defect existing at the time of the sale, i. e., redhibitory in nature.
Proof that the defect existed at the time of the sale can be by direct or circumstantial evidence, and in certain situations, not *1352 here applicable, can be presumed to have existed at the time of the sale. Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., supra; Cutrer v. Kentwood Motors, Inc., 351 So.2d 817 (La.App. 1st Cir. 1977); LSA-C.C. art. 2530.
I am well aware of those cases allowing redhibition where the defect does not manifest itself until some considerable time after the sale. However, in each of those cases there was evidence, be it direct or circumstantial but nonetheless evidence, in the record to support the fact finder's conclusion that the defect existed at the time of the sale. See Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., supra.
In the instant case, there is nothing in the record which in any way even attempts to prove that the brake failure or the exhaust manifold leak resulted from defects which existed in the car at the time of the sale. The exhaust manifold leak did not occur until approximately nine or ten months after the sale. Additionally, there is no proof that Cangelosi experienced any difficulty with the brakes prior to the accident, also some nine or ten months after the sale. Under the circumstances, fair inferences may be drawn that such malfunctions arose other than from defects in the vehicle existing at the time of the sale.
I can only conclude that the proof offered is not sufficient to sustain plaintiff's burden of establishing the existence of a redhibitory defect in the car at the time of the sale. Accordingly, I find that the trial court erred in rescinding the sale and I would reverse the judgment appealed.
NOTES
[1] The car was damaged in an accident before McPete could repair the manifold leak.