463 So.2d 1356 (1984)
Brenda BOURNE
v.
REIN CHRYSLER-PLYMOUTH, INC. and Chrysler Corporation.
No. 83 CA 1380.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
Rehearing Denied February 21, 1985.
*1357 Robert J. Caluda, New Orleans, for Brenda Bourne.
Richard Creed, Jr. of Owen, Richardson, Taylor, Mathews & Atkinson, Baton Rouge, for Chrysler Corp.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON [*], JJ.
JOHN S. COVINGTON, Judge pro tempore:
This is a suit for reduction of the purchase price of an automobile. Judgment was rendered against Chrysler Corporation, the manufacturer, and it appealed suspensively, and in the alternative, devolutively the August 27, 1983 Judgment awarding Brenda Bourne a refund of the $2,490.37 down payment, $1,518.96 representing installment payments, $5,000 for her mental anguish and inconvenience, and $3,000 for attorney's fees.
Chrysler Credit Corporation's suit for executory process resulted in the judicial sale of the automobile before Ms. Bourne filed her quanti minoris suit against the seller and the manufacturer.

ASSIGNMENTS OF ERROR
Defendant-appellant, Chrysler Corporation (Chrysler), assigns as errors by the District Court (1) the awarding of damages for inconvenience and mental anguish "which is clearly not recoverable in this type of action" and (2) awarding an excessive amount of attorney's fees.

ISSUES
The issues presented for our resolution are (1) whether damages for inconvenience and mental anguish were properly awarded under the facts peculiar to the instant case, (2) whether an award of $3,000 attorney's fees was proper in this case, and (3) whether plaintiff-appellee is entitled to an award of additional attorney's fees incurred in order to protect her rights on appeal of the lower court judgment.

FACTS
Brenda Bourne purchased a new 1981 Chrysler Cordoba automobile on February 27, 1981 from defendant Rein Chrysler-Plymouth, Inc. (Rein), for a total deferred sales price of $14,641.85. Rein's salesman did not disclose to Ms. Bourne that the automobile had any mechanical defects which would render it "either absolutely useless, or its use so inconvenient and imperfect" to give rise to the legal presumption that she "would not have purchased it" if she had "known of the vice." C.C. art. 2520. Ms. Bourne accepted delivery of the car on Friday, February 27, 1981 after Rein's service department had closed for the weekend. While enroute to her home, immediately after accepting delivery, Ms. Bourne noticed the sluggish performance of the motor. During the weekend the engine "died" several times while Ms. Bourne was driving so she took the vehicle to the service department on Monday morning so that Rein's service technicians could resolve the engine stalling problem but they did not attempt any repairs that day. She returned the next day and was informed to bring the car back on Thursday because that would be the earliest time the repairs could be made. Between Tuesday morning and Thursday morning, when she returned the car to the service department as instructed, the horn was activated spontaneously *1358 and had to be disconnected to silence it. The technicians set the timing so high the car "would get away from" Ms. Bourne and she was frightened by its engine racing tendencies. After the horn was "fixed" on Thursday it did not function at all. The malfunctioning headlights were also repaired at that time. Within a few days after Ms. Bourne bought the car a part of the console and the door panel fell off and had to be reglued. During the second week following the date of the purchase the vinyl roof "was starting to bubble" so Ms. Bourne returned the car to the service department where it remained two days because of the many problems to be dealt with. During that two day stay at Rein's the timing was reset but after the resetting the car began stalling out again.
From the very outset the cruise control never functioned. Early in April, 1981 the air pollution pump became partially disconnected and it drilled a hole through the sheet metal of the hood. About one month later the air pollution pump and pulley assembly were replaced but the hole in the hood was not repaired. Late in June, 1981 the air conditioner malfunctioned while Ms. Bourne was driving to New Orleans from Ponchatoula and "all of a sudden the water came pouring in over" her feet; the water was coming from "in the front under the dash" and even after she turned off the air conditioner "it still kept coming"; the water flooded the interior of the car to a depth "up past the shoe". The flooding ruined the carpet and resulted in an offensive odor which did not dissipate during the two months Ms. Bourne ceased driving the car because Rein refused to replace the carpet and because she was "already terrified of the car because of the pump" disengaging and drilling a hole in the hood.
Chrysler issued three recall notices requesting owners of 1981 Chrysler Cordobas to take their autos to the dealers to correct specified mechanical problems, including engine sluggishness and the pump.
The increasing frequency of taking the automobile to Rein for mechanical corrections made her the butt of much laughter and unkind jokes by Rein's service personnel and some other personnel. The many returns for repairs, with repeated failures in her endeavor to have the vehicle so it would provide her safe and reliable transportation, caused Ms. Bourne to suffer great embarrassment, humiliation, and inconvenience from the day she bought the car and accepted its delivery up to the time she stopped driving the car in early July, 1981. She was afraid to drive the car because of its shabby and unsafe condition.
Although Ms. Bourne continued to pay the monthly installments to Chrysler Credit Corporation (Chrysler Credit) and was not delinquent with them, Chrysler Credit filed suit to seize and sell the car under executory process. Upon receipt of petition for the writ of seizure and sale, Ms. Bourne retained counsel to enjoin both the seizure and sale in order to preserve her credit reputation and undo some of the embarrassment and humiliation she suffered when the car was seized at her work place. The executory proceedings damaged Ms. Bourne's credit and she paid cash for a used car.

REDUCTION IN PURCHASE PRICE AND DAMAGES
In the instant case the lower court held that the sale could not be rescinded because Ms. Bourne no longer owned or possessed the vehicle. C.C. art. 2530 states that "If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale." Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Cangelosi v. McInnis-Peterson Chevrolet, Inc., 373 So.2d 1346 (La.App. 1st Cir.1979); Davidson v. New Roads Motor Co., Inc., 385 So.2d 319, 321 (La.App. 1st Cir.1980). Latent defects appearing well after the sale can be a basis for redhibition if they are not the normal result of ordinary use. Davidson v. New Roads Motor Co., Inc., supra.
Plaintiff proved a pattern of defects in the vehicle which rendered its use inconvenient and imperfect. The accumulation *1359 of all the vices, established by a preponderance of the evidence, convinces us that plaintiff would have been entitled to a total rescission of the sale if she had been in a position to return the automobile at the time of the trial of this action. J.B. Beaird Co., Inc. v. Burris Bros. Limited, 216 La. 655, 44 So.2d 693 (1950); Stratton-Baldwin Co., Inc. v. Brown, 343 So.2d 292, 297 (La.App. 1st Cir. 1977). The automobile was sold at judicial sale and Ms. Bourne is unable to return the redhibitorily defective automobile to Rein. Therefore, plaintiff is entitled to a reduction in purchase price and recovery of expenses. Stratton-Baldwin Co., Inc. v. Brown, supra.
The District Court correctly stated in its written "Opinion" that total rescission of the sale was not possible because plaintiff no longer owned or possessed the vehicle when the suit for quanti minoris was tried. Stating that "it is abundently clear, however, that plaintiff is entitled to some relief" the court declared her "entitled to a refund of the down payment of $2,490.37 and of the amount paid as installments" which totaled $1,518.96 and further declared she was "entitled to ... $5,000.00 for inconvenience and mental anguish, and an additional sum of $3,000.00 as attorney fees."
The proper amount of price reduction a purchaser is entitled to in a quanti minoris action is the difference between the actual selling price and the price a reasonable buyer and seller would have agreed upon if they had both known of the defects. Lusk v. Durham Pontiac-Cadillac, Inc., 459 So.2d 1277, 1280 (La.App. 1st Cir.1984); Leonard v. Daigle Pontiac-Buick-GMC, Inc., 413 So.2d 577 (La.App. 1st Cir.1982); and Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir.1975).
Defendant-appellant, Chrysler, does not argue in its brief that the automobile did not have the accumulation of vices which we hold to constitute redhibitory defects within the intention of C.C. art. 2520.
Chrysler simply argues in its brief that the lower court committed reversible error by awarding plaintiff damages for mental anguish and inconvenience. Chrysler relies on Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976) as authority for its premise that because the record is devoid of any suggestion that Ms. Bourne "purchased the vehicle for any type of intellectual enjoyment" the lower court improperly awarded her non-pecuniary damages in her quanti minoris action based on C.C. art. 2520 et seq.
Meador, supra, was not a suit for redhibition or quanti minoris. The litigation in Meador had its origin in defendant's alleged excessive delay in completing repairs to an automobile brought to defendant to repair collision damage. The contractual obligation undertaken by defendant in Meador was the obligation to repair the automobile in a workmanlike manner in as short a period as possible under the total facts and circumstances. The Supreme Court held that C.C. art. 1934(3), dealing with damages generally, precludes awarding non-pecuniary damages in a breach of contract context unless intellectual enjoyment is a principal object of the contract, and that non-pecuniary damages, when allowed, are limited to those which compensate for, or are directly related to, nonfulfillment of the intellectual object.
The Meador rule is no longer applied inflexibly in contract actions. Gele v. Markey, 387 So.2d 1162 (La.1980); Pike v. Stephens Imports, Inc., 448 So.2d 738, 743 (La.App. 4th Cir.1984).
Philippe v. Browning Arms Co., 395 So.2d 310, 318 (La.1981), on rehearing, stated the duty of a manufacturer as being "the obligation to produce a product which is reasonably safe for its intended use" and that "[b]reach of this obligation gives rise to a cause of action in favor of the purchaser of the product not only to demand the return of the purchase price, but also, because the manufacturer is presumed to know of defects in its products, to demand all damages caused by the defect and reasonable attorney's fees."
The court, in Philippe, supra, reasoned that "[t]here is no compelling reason to require a person injured by a defective product he has purchased to proceed either *1360 in contract or in tort. The seller's (manufacturer's) act of delivering a defective thing, when he knows of the defect, gives rise to delictual, as well as contractual, liability. (citations omitted)." The Supreme Court, per Lemmon, J., held "that the right and the extent of recovery by the purchaser of a thing against the seller or manufacturer is governed by the codal articles providing for responsibility in the seller-purchaser relationship, as applied through C.C. art. 2315. Since C.C. art. 2545 clearly provides for recovery of damages caused by a defective product and for reasonable attorney's fees, we conclude the court of appeal correctly made such award."
In reaching the conclusion stated above, the court in Philippe reasoned that: "The appropriate standard of conduct in this case is derived from the codal articles on sales, since the cause of action of the purchaser of a defective thing may be enforced against both the seller and the manufacturer of a thing"; "[o]ne of the obligations imposed on the seller (manufacturer) is the warranty against hidden defects of the thing sold"; and the manufacturer, imputed with knowledge of defects in his products, is liable not only for the return of the price and the expenses of the sale, but "also (is) answerable for damages and reasonable attorney's fees." Philippe, supra, at 318.
Philippe v. Browning Arms Co., supra, in our opinion, is authority for the proposition that the purchaser who sustains damages because he or she purchased a redhibitorily defective product is entitled to be compensated for all provable damages, including inconvenience and mental anguish, if the causation link is established. Philippe, supra, mandates judicial repudiation of the blanket exclusion of damages for inconvenience and mental anguish in redhibition and quanti minoris actions. To knowingly sell a redhibitorily defective product, such knowledge being imputed to a manufacturer, is to do a tortious act. It is well settled that a tortfeasor's victim who sustains mental anguish as a result of the action or inaction of the tortfeasor is entitled to be compensated for it.
While the Trial Judge did not assign detailed written reasons, he obviously believed that plaintiff's uncontradicted evidence established that plaintiff in fact suffered mental anguish, in addition to considerable inconvenience, because of the multiplicity of vices or defects cumulatively constituting grounds for redhibition, which were never resolved satisfactorily enough to defeat plaintiff's suit for quanti minoris. Factual conclusions of a trier of fact are entitled to great weight and should not be disturbed on review absent manifest error, especially when based on evaluation of credibility of live testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We have concluded that the obvious findings of fact made by the lower court are supported by the record; his findings therefore are not clearly wrong.

ATTORNEY'S FEES
Defendant-appellant, Chrysler, contends that the award of $3,000 as attorney's fees by the District Court is excessive and should be reduced. Plaintiff-appellee urges that the award is not unreasonable and this court should not disturb the considerable discretion the trial court has in making an award of attorney's fees. Additionally, plaintiff-appellee urges us to award her an attorney's fee of $500 for services rendered in this appeal to protect her interests. The trial judge has much discretion in determining the amount of attorney's fees.
In Conlay v. Houston General Insurance Co., 370 So.2d 196 (La.App. 3rd Cir. 1979), the court stated that "an increase in attorney's fees for services on appeal is usually awarded when the defendant appeals and obtains no relief on appeal, and the plaintiff requests it in accordance with proper appellate procedure. The basis for awarding additional attorney's fees is that the litigant successful at the trial level must incur additional expenses, which otherwise would not have been incurred, in order to protect his rights on appeal." 370 So.2d 196, 201.
*1361 In this case the return date was December 10, 1983 and the record was lodged on December 12, 1983. Under the unambiguous provisions of C.C.P. art. 2133, unless an appellee answers the appeal "not later than fifteen days after the return day or the lodging of the record whichever is later" the appellate court cannot consider appellee's request to have the lower court's judgment modified or request damages against the appellant. Defendant-appellant and plaintiff-appellee filed their briefs within the time allotted by Rule 2-12.7 of the Uniform Rules-Court of Appeal. Plaintiff-appellee did not answer the appeal.
Plaintiff-appellee's request for additional attorney's fees for services rendered in this appeal is made solely in her brief which was filed on January 13, 1984, more than fifteen days "after the ... lodging of the record". Therefore, even if we were to construe plaintiff-appellee's request via brief as an answer to the appeal, which we specifically do not, it obviously was not timely filed, having been filed 32 days after the record was lodged in this court. Because this procedural requirement has not been met, we are not at liberty to grant the increase prayed for even though the increase is merited under the facts. Gour v. Daray Motor Co., Inc., 373 So.2d 571, 579 (La.App. 3rd Cir.1979); Commercial Union Insurance Co. v. Melikyan, 430 So.2d 1217, 1223-1224 (La.App. 1st Cir.1983); and Robertson v. Coleman Oldsmobile, Inc., 451 So.2d 1323, 1327 (La.App. 1st Cir.1984).
All costs of court in the District Court and on appeal are assessed against defendant-appellant, Chrysler Corporation.
AFFIRMED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this court pro tempore.