# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### NO. 2022 CA 1247

*mvt.*

*CHH*

~~vote~~

## ZEIGLER TREE & TIMBER, INC.

## VERSUS

## OLD RIVER OF NEW ORLEANS, LLC

*Judgment Rendered:* JUL 0 5 2023

* * * * * * * *

**Appealed from the**
**22nd Judicial District Court**
**In and for the Parish of St. Tammany**
**State of Louisiana**
**Case No. 2019-10147, Division J**

**The Honorable Ellen M. Creel, Judge Presiding**
**The Honorable William J. Burris, Pro Tempore**

* * * * * * * *

| | |
|---|---|
| Gregory T. Stevens | Counsel for Defendant/Appellant |
| Taylor J. Boudreaux | Old River of New Orleans, LLC |
| Jordan P. Zeringue | |
| Baton Rouge, Louisiana | |
| | |
| Hector R. Lopez | Counsel for Plaintiff/Appellee |
| Covington, Louisiana | Zeigler Tree & Timber, Inc. |

* * * * * * * *

## BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

*ChuTZ, J. concurs*
*mvt.*

**THERIOT, J.**

Defendant-Appellant Old River of New Orleans, LLC appeals the Twenty-Second Judicial District Court's March 17, 2022 judgment and July 12, 2022 judgment. For the following reasons, we affirm. We further grant Zeigler Tree & Timber, Inc.'s answer to the appeal in part and deny the answer in part.

## FACTS AND PROCEDURAL HISTORY

The plaintiff is Zeigler Tree & Timber, Inc. ("Zeigler"), which has been in business for over twenty-five years. It is in the business of land-clearing, tree-cutting and removal, timber transport, and soil-land fill-hauling primarily in St. Tammany Parish, Louisiana. Zeigler has also operated as a wood hauler, wherein it enters into contracts with paper companies[1], loads heavy wood products onto 18-wheelers, and delivers those products to those companies' plants.

The owner and president of Zeigler is Sean Zeigler ("Mr. Zeigler"). Mr. Zeigler oversees the company's daily operations and personnel, handles the company's books and receipts, and handles the company's budgeting. Mr. Zeigler is also a state licensed arborist and possesses a commercial driver's license.

In July 2017, Mr. Zeigler sought to purchase a semi-tractor for the purpose of delivering wood products per the aforementioned contracts. At that time, Zeigler did not have any semi-tractors in its fleet. Per the petition, Mr. Zeigler had limited prior experience purchasing and/or operating semi-tractors.

On July 24, 2017, Mr. Zeigler went to Old River of New Orleans, LLC ("Old River"), a truck dealer located in St. Rose, Louisiana, to purchase a semi-tractor. Mr. Zeigler was assisted by Ricky Whipple, a salesman employed by Old River.[2] Mr. Zeigler alleges that he explained to Mr. Whipple the nature of Zeigler's business and further expressed that he needed a strong, reliable semi-

---

[1] Zeigler has contracts with International Paper and Georgia Pacific, among other companies.

[2] As of the time of the trial in this matter, Mr. Whipple no longer worked at Old River. He did not testify at trial.

2

tractor for the purpose of hauling heavy loads. Mr. Whipple directed Mr. Zeigler to a 2012 Freightliner Coronado ("the truck"), VIN # 1FUJGNDV0CDBH8284.

Mr. Whipple offered Mr. Zeigler the opportunity to test drive the truck. Mr. Zeigler declined and chose to ride in the passenger seat. At trial, Mr. Zeigler testified that he elected to ride as a passenger because he believed that he could best analyze the truck's performance from the passenger seat. Mr. Zeigler further testified that he was able to look under the hood of the truck and examine the engine, which he stated was "pristine clean" and looked new. He saw no oil residue, nor did he see any signs of leaks. Following the test drive and subsequent examination, Mr. Zeigler informed Mr. Whipple that he would like to proceed with the purchase of the truck.

Prior to completing the purchase, Old River provided four detailed inspection reports to Mr. Zeigler. Each of these inspection reports is dated May 9, 2017. The first inspection report is a 150-Point Mack Inspection, which provides a lengthy checklist of items to inspect relating to the truck. These tasks are separated into four categories: mechanical, interior, under truck, and exterior. Each task is checked off. The second inspection report is the B Service Report, which similarly contains a checklist of 68 inspection-related tasks. All but two tasks are checked off. The third inspection report is the Annual Inspection, which provides a list of conditions to be reported on. Each condition provided is checked as "OK." The fourth inspection report is the Truck Master Vehicle Inspection Checklist. Each task on this checklist is checked as "PASS."

Following his review of the four inspection reports, Mr. Zeigler concluded that the truck was in working order and elected to finalize the purchase. Mr. Zeigler was then provided with a document that is formatted as an invoice. The invoice includes the selling price and other fees related to the purchase of the

3

truck.[3] Per the invoice, the balance owed by Mr. Zeigler for the truck was $60,375.00. This total included a three-year, 300,000-mile warranty, which cost $7,895.00.[4] Mr. Zeigler signed the invoice in the "PURCHASER" section and paid the full balance via check.

Following the July 24, 2017 purchase, there was a delay in the delivery of the truck. Old River first attempted to deliver the truck to Zeigler on August 14, 2017. When the truck arrived, Mr. Zeigler noticed a "massive" oil puddle underneath the truck, which had accumulated while the truck was idling. Mr. Zeigler and the truck's driver opened the truck's hood, which revealed that the truck's engine was covered in oil. Mr. Zeigler then entered the cab of the truck wherein he observed that several of the truck's dashboard lights were lit up. Because of these issues, Mr. Zeigler refused to accept delivery. He contacted Mr. Whipple, his salesman at Old River, and informed him that he was not willing to accept the truck in its current condition. He further informed Mr. Whipple that he wanted to send the truck back to Old River so that repairs could be performed. Zeigler sent the truck back to Old River that same day.

Old River delivered the truck to Zeigler in September 2017. Per Mr. Zeigler's testimony, the truck's engine was still leaking oil and the warning lights on the dashboard were still lit up. After contacting Old River, Mr. Zeigler accepted the delivery and put the truck to work. Mr. Zeigler testified that the truck continued to have issues. Specifically, he testified that the truck would "shut down[,]" limit its power, and would not go over 35 miles an hour. Zeigler attempted to use the truck for a week despite these issues, but ultimately returned the truck to Old River for a second round of repairs.

---

[3] The invoice includes a purported waiver, which is discussed in more detail below. Also included in the invoice is a credit for $13,500.00, which is labeled as a trade in. There was no trade in related to the purchase of the truck. Mr. Zeigler believes that the credit was simply a mislabeled discount.

[4] The extended warranty sold in this case was provided by National Truck Protection.

4

Per Mr. Zeigler, when the truck was returned to Zeigler after the second round of repairs, the truck still had oil leaks, lights lit up on the dash, and loss of power. The company continued to use the truck until on or about December 16, 2017, when Mr. Zeigler had the truck towed to Old River. Old River did not return the truck to Zeigler until April 30, 2018.

Mr. Zeigler testified that the truck continued to have issues after it was returned on April 30, 2018. In July 2018, Zeigler had to purchase a new radiator for the truck. Mr. Zeigler testified that Zeigler did not have the truck from July 12 to July 18, 2018 as a result.

In September 2018, the truck was again towed to Old River to be repaired. At this time, Old River replaced the truck's "DPF inlet temperature sensor" and "adjusted the ABS brake sensor." The truck was returned to Zeigler in late October 2018. Per Mr. Zeigler's testimony, the truck continued to have issues and was brought to another company called Fortenberry Diesel Repair in Mississippi. Fortenberry Diesel Repair was unable to perform all of the necessary repairs, but repaired what it could. In December 2018, the truck's turbo went out, necessitating a turbo replacement. Shortly thereafter, Zeigler retired the truck.[5]

Zeigler filed suit against Old River on January 9, 2019. In its petition, Zeigler alleged that the truck did not have the qualities that Old River orally represented to Zeigler. Zeigler further alleged that Old River knew that the truck was defective prior to the sale and before delivery, but failed to declare same to Zeigler. Per Zeigler, the truck's defects substantially impaired its use, value, and safety, and Zeigler provided Old River with all opportunities to repair the truck. Zeigler alleges that it demanded a rescission of the sale prior to filing suit, but that

---

[5] Per Mr. Zeigler's testimony, Zeigler did not purchase a replacement truck until May 2020. Mr. Zeigler estimated at trial that from the purchase date of July 24, 2017 to December 31, 2018, the truck was out of service for a total of eight months (and thus in service for approximately eight months during that time frame). Because the replacement truck was not purchased until May 2020, Zeigler only had use of the truck for eight months out of thirty-three months. When calculating the amount of time Zeigler *should* have had use of the truck but didn't, Mr. Zeigler determined that he had loss of use of the truck for a total of twenty-five months. Mr. Zeigler uses this number to calculate his financial loss, insurance expenses, and other costs.

Old River refused Zeigler's demand. Accordingly, Zeigler's petition seeks the rescission of the sales contract, damages, and attorney's fees.

On October 2, 2020, Zeigler filed a motion for summary judgment, seeking to establish that the truck possessed redhibitory defects and that Old River was aware of the defects but declared otherwise. On February 25, 2021, following a hearing on the motion for summary judgment, the trial court denied Zeigler's motion. Zeigler subsequently sought a supervisory writ, which this court denied. See *Zeigler Tree v. Old River of New Orleans, LLC*, 2021-0171 (La. App. 1 Cir. 4/26/21), 2021 WL 1614524 (unpublished writ action).

A jury trial took place on March 7, March 8, and March 9, 2022. At the conclusion of the trial, the jury found in favor of Ziegler. Specifically, judgment was rendered in favor of Zeigler and against Old River, rescinding the sale of the truck, ordering Zeigler to return the truck to Old River, and ordering Old River to pay to Zeigler $60,375.00. The judgment further ordered Old River to pay $6,000.00 in interest on the purchase price, $46,054.00 in reasonable expenses occasioned by the sale, $5,801.00 for preservation of the truck, $50,900.00 in damages, and $42,234.88 in attorney's fees. This judgment was signed on March 17, 2022.

Old River subsequently filed a *Motion for Judgment Notwithstanding the Verdict Pursuant to Code of Civil Procedure Article 1811 and Additionally/Alternatively, Motion for New Trial Pursuant to Code of Civil Procedure Articles 1972 and 1973*. On July 12, 2022, the trial court rendered judgment which, in pertinent part, denied Old River's motion for judgment notwithstanding the verdict and motion for new trial. This appeal of the March 17, 2022 judgment and July 12, 2022 judgment followed.

6

## ASSIGNMENTS OF ERROR

Old River assigns the following as error:

(1) The jury manifestly erred by failing to enforce the redhibition waiver that Ziegler signed when it purchased the truck.

(2) The jury manifestly erred in finding that the truck possessed redhibitory defects.

(3) The jury manifestly erred in finding that Old River knew of a redhibitory defect in the truck or made a misrepresentation concerning a quality of the truck.

(4) The jury manifestly erred when it awarded the consequential damages.

## STANDARD OF REVIEW

It is well-settled that a court of appeal may not set aside a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989).

# DISCUSSION

## Assignment of Error #1

In its first assignment of error, Old River argues that the jury manifestly erred by failing to enforce the redhibition waiver that Ziegler signed when it purchased the truck.

The seller warrants the buyer against redhibitory defects (vices) in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. *Guillot v. Doughty*, 2013-1348 (La. App. 1 Cir. 3/21/14), 142 So. 3d 1034, 1043; see also La. Civ. Code art. 2520. To sustain a suit in redhibition, a purchaser must prove that: (1) the thing sold is absolutely useless for its intended purpose or its use is so inconvenient that had he known of the defect, he would never have purchased it; (2) the defect existed at the time of sale but was not apparent; and (3) the seller was given an opportunity to repair the defect. *Ross v. Premier Imports*, 96-2577 (La. App. 1 Cir. 11/7/97), 704 So. 2d 17, 21; see also La. Civ. Code art. 2520.

The warranty created against redhibitory defects applies to the sale of used equipment, but it is not as extensive as in the sale of new equipment. However, what is required is that the equipment must operate reasonably well for a reasonable period of time. *Ross v. Premier Imports*, 704 So. 2d at 21.

The seller can limit the implied warranty against redhibitory defects by declaring to the buyer the defects at the time of the sale, or the seller can otherwise limit his obligations as seller, providing he does so clearly and unambiguously. In order to be effective, such waiver of warranty must satisfy three requirements: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and, (3) either be brought to the attention of the buyer or explained to him. *Id;* see also La. Civ. Code art. 2548.

Regarding the third requirement, the waiver of warranty does not have to be verbally brought to a purchaser's attention. See Ross v. Premier Imports, 704 at 21-22. Rather, the third requirement for an effective waiver of warranty is satisfied if the waiver was either explained to the purchaser or brought to his attention. (Emphasis added.) Ross, 704 So. 2d at 22. While an explanation may necessarily require verbal communication, a verbal explanation is not necessarily required when something must simply be brought to a purchaser's attention. Thus, to be effective, it is not necessary for a waiver to be verbally brought to the attention of a purchaser if the facts demonstrate that the purchaser should have known of the existence of the waiver through presentation of the documents and the language and format of the waiver. Id.

The seller bears the burden of proving the warranty has been waived. Whether there is an effective waiver of warranty is a question of fact that will not be disturbed on appeal absent manifest error. Brown-Knight v. Just Add Gas, Inc., 2011-2269 (La. App. 1 Cir. 11/29/12), 2012 WL 5990273, at *6 (unpublished). Waivers of the warranty are strictly construed against the seller. Minton v. Acosta, 2021-1180 (La. App. 1 Cir. 6/3/22), 343 So. 3d 721, 727.

On appeal, Old River argues that Ziegler executed a valid waiver of the warranty against redhibitory defects. The purported waiver is in the July 24, 2017 invoice and states:

> ALL WARRANTIES, IF ANY BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALERS AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH [WARRANTIES]. UNLESS DEALER FURNISHES [BUYER] WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY DEALER ON ITS OWN BEHALF, DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED INCLUDING ANY [IMPLIED] WARRANTIES OF MERCHANTABILITY OR FITNESS.

Although Mr. Zeigler signed the invoice beneath the purported waiver, Mr. Zeigler testified at trial that he did not see the waiver on the invoice until it was brought to his attention at a deposition.[6]

The trial court judge instructed the jury of the law regarding redhibitory defects and waivers of the warranty against redhibition. After deliberations began, the judge received a note from the jury asking the following:

> Is no warranty an effective exclusion or limitation of the warranty against redhibitory defects? Is this what the invoice signature covers?

The judge declined to answer the jury's question, explaining that answering their inquiry would be a comment on the evidence presented. The judge instead reiterated the law as it relates to a purported waiver of the warranty against redhibitory defects. The jury subsequently concluded that Old River failed to prove that there was an effective exclusion or limitation of the warranty against redhibitory defects.

The jury clearly considered the waiver issue and obviously resolved the issue in favor of Zeigler. The jury had the opportunity to observe the witnesses, including Mr. Zeigler, and assess their demeanor and credibility. Whether there is an effective waiver of warranty is question of fact that will not be disturbed on appeal absent manifest error. After reviewing the record, we find no manifest error in this conclusion. See *Harvell v. Michelli*, 500 So. 2d 871, 873 (La. App. 1st Cir. 1986). This assignment of error lacks merit.

Assignment of Error #2

In its second assignment of error, Old River argues that the jury manifestly erred in finding that the truck possessed redhibitory defects. The existence of a redhibitory defect is a question of fact, which cannot be disturbed on appeal unless the record as a whole establishes that the finding is manifestly erroneous or clearly

---

[6] The purchase included a three-year, 300,000-mile warranty, which cost $7,895.00. Accordingly, Old River did in fact furnish Zeigler with a separate warranty, although it is unclear whether that warranty was ever put into writing.

wrong. *Minton v. Acosta*, 2021-1180 (La. App. 1 Cir. 6/3/22), 343 So. 3d 721, 725.

Louisiana Civil Code article 2530 provides:

> The warranty against redhibitory defects covers only defects that exist at the time of delivery. The defect shall be presumed to have existed at the time of delivery if it appears within three days from that time.

Mr. Zeigler's testimony established that the truck had at least three issues when delivered to Zeigler: (1) an oil leak; (2) a number of lit dashboard warning lights; and (3) a power issue which prevented the truck from accelerating. These issues rendered the truck unusable on multiple occasions. Mr. Zeigler further testified that once the oil leak was finally repaired, the truck began to have computer issues.

Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. *Bourne v. Rein Chrysler-Plymouth, Inc.*, 463 So. 2d 1356, 1358 (La. App. 1st Cir. 1984); see also *Davidson v. New Roads Motor Co., Inc.*, 385 So. 2d 319, 321 (La. App. 1st Cir. 1980); *Cangelosi v. McInnis Peterson Chevrolet, Inc.*, 373 So. 2d 1346, 1349 (La. App. 1st Cir. 1979). Zeigler proved a pattern of defects in the truck which rendered its use inconvenient and imperfect. See *Bourne*, 463 So. 2d at 1358.

The jury found that Zeigler successfully proved that the truck possessed redhibitory defects or vices. We cannot say that this finding was manifestly erroneous or unreasonable. See *Rosell*, 549 So. 2d at 844. This assignment of error lacks merit.

Assignment of Error #3

In its third assignment of error, Old River argues that the jury manifestly erred in finding that Old River knew of a redhibitory defect in the truck or made a misrepresentation concerning a quality of the truck.

At trial, Zeigler presented evidence of repairs performed on the truck prior to the July 24, 2017 purchase date. Specifically, Zeigler presented a work order that

11

indicated two repair tickets being opened prior to July 24, 2017. The first repair ticket was opened on May 1, 2017 and closed on May 31, 2017, and described the truck's oil leaks in detail, as well as the steps taken in an attempt to remedy those issues. The second repair ticket was opened on June 7, 2017 and closed on June 16, 2017, and describes an issue regarding the truck's check-engine light.

Further, there is a third repair ticket which was opened on July 26, 2017 and closed on August 10, 2017. Importantly, the third ticket was opened after the sale but prior to Old River's first attempt to deliver the truck on August 14, 2017. The third ticket describes another issue with the truck's check-engine light.

Finally, there is a fourth repair ticket opened on August 22, 2017 and closed on August 31, 2017, which again describes oil leaks and the attempts to fix those leaks. Old River reattempted delivery after these repairs in September 2018. Mr. Zeigler testified at trial that at the time of the September delivery, the truck still had an oil leak, although smaller than before, and the warning lights lit up on the dashboard. He further testified that he needed to use the truck and that he accepted delivery with the intent to bring the truck to Old River for repairs when he could.

As stated above, multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. See *Bourne*, 463 So. 2d at 1358. The work orders clearly show that Old River was aware of the truck's defects prior to the sale, prior to delivery, and at the time of delivery. Considering same, we cannot say the jury erred in determining that Old River knew about the truck's redhibitory defects. This assignment of error lacks merit.

Assignment of Error #4

In its fourth assignment of error, Old River first argues that the jury manifestly erred when it awarded the consequential damages. Old River requests that this court set aside the following awards: (1) damages in the amount of

12

$50,900.00; (2) reasonable expenses occasioned by the sale in the amount of $46,054.00; and (3) the cost of preservation of the vehicle in the amount of $5,801.00. Old River further requests that the award of attorney's fees in the amount of $42,234.88 be set aside.

Louisiana Civil Code article 2545 states:

A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.

A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

As stated above, we affirm the jury's finding that Old River knew of the defects and failed to declare the defects to Zeigler. As a result, Old River is liable for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney's fees. See La. Civ. Code art. 2545.

Louisiana jurisprudence has consistently held that, in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient. *Theriot v. Allstate Ins. Co.*, 625 So. 2d 1337, 1340 (La. 1993).

Pursuant to La. Civ. Code art. 2545, the jury awarded the following:

(1) Return of the purchase price of $60,375.00.
(2) Interest on the purchase price of $6,000.00.[7]

---

[7] Because Old River does not challenge the amount awarded as return for the purchase price or the amount awarded in interest, we need not review those amounts.

13

(3) Reasonable expenses occasioned by the sale of $46,054.00.

(4) Expenses incurred for the preservation of the vehicle in the amount of $5,801.00.

(5) Damages in the amount of $50,900.00.

(6) Attorney's fees in the amount of $42,234.88.[8]

Old River primarily argues that Zeigler failed to present competent evidence sufficient to justify the amount of damages awarded, the amount of reasonable expenses awarded, or the amount of expenses for preservation of the truck. At trial, Mr. Zeigler testified at length regarding his process for calculating damages, reasonable expenses, and expenses for preservation of the truck. Old River did not put forth any testimony to contradict the amounts Mr. Zeigler provided. Our review of the record reveals that a reasonable basis exists for the jury's awards. Considering same, we cannot conclude that the jury abused its discretion.

Old River further argues that the jury's award of attorney's fees is unwarranted. A trial court has great discretion in awarding attorney's fees in a redhibition case. *Jones v. Winnebago Indus., Inc.*, 47,137 (La. App. 2 Cir. 5/16/12), 92 So. 3d 1113, 1119-20; see also *Health Educ. and Welfare Fed. Credit Union v. Peoples State Bank*, 2011-672 (La. App. 3 Cir. 12/7/11), 83 So. 3d 1055, 1058; *Dailey v. The Home Furnishings Store*, 2002-1225 (La. App. 4 Cir. 9/17/03), 857 So. 2d 1051, 1059. Before an attorney's fee award will be disturbed the record must reveal that the trial court abused its much discretion in making the award. *Jones*, 92 So. 3d at 1120; see also *Health Educ. & Welfare Fed. Credit Union*, 83 So. 3d at 1058.

The jury awarded $42,234.88 in attorney's fees, which is approximately 25% of the total of its other awards to Zeigler. We cannot conclude that this award is an abuse of the trial court's discretion. This assignment of error lacks merit.

---

[8] Old River was also ordered to pay all court costs.

Answer to Appeal

Zeigler filed an answer to Old River's appeal wherein it requests that the original judgments be modified to include additional interest on the purchase price and the amount for preservation of the truck awarded for the time between the March 17, 2021 judgment and the result of this appeal. The March 17, 2021 judgment awards to Zeigler $6,000.00 interest on the purchase price of the truck and $5,801.00 to Zeigler for preservation of the truck. The judgment further condemns Old River to pay judicial interest from the date of judicial demand on the award of $144,989.88.[9] Because judicial interest has been accruing since the date of judicial demand, we decline to amend the trial court's judgment to award additional interest. Further, we decline to amend the trial court's judgment to increase the award for preservation of the truck.

Zeigler also seeks additional attorney's fees due to the cost of the appeal. An increase in attorney's fees is usually awarded where a party who was awarded attorney's fees by the trial court is forced to and successfully defends an appeal. *Aswell v. Div. of Admin., State*, 2015-1851 (La. App. 1 Cir. 6/3/16), 196 So. 3d 90, 96, writ denied, 2016-1263 (La. 11/7/16), 209 So. 3d 102. The award of additional attorney's fees is to keep the appellate judgment consistent with the underlying judgment. To determine the amount of attorney's fees, factors that are considered include "the skill exercised by the attorney and the time and work required on appeal." *Lewnau v. Bd. of Supervisors of S. State Univ.*, 2019-0943 (La. App. 1 Cir. 1/9/20), 295 So. 3d 419, 427, writ denied, 2020-00240 (La. 5/1/20), 295 So. 3d 937. Since Zeigler successfully defended this appeal, we award additional attorney's fees for the work performed defending the appeal in the amount of $2,000.00.

---

[9] $144,989.99 is the total award to Zeigler, minus the $6,000.00 award of interest on the purchase price.

## DECREE

For the above and foregoing reasons, the Twenty-Second Judicial District Court's March 17, 2022 judgment and July 12, 2022 judgment are affirmed. Zeigler Tree & Timber, Inc.'s answer to the appeal is granted in part and denied in part. We assess appellate court costs to Old River of New Orleans, LLC.

**AFFIRMED; ANSWER TO APPEAL GRANTED IN PART AND DENIED IN PART.**