704 So.2d 17 (1997)
Robert James ROSS
v.
PREMIER IMPORTS.
No. 96 CA 2577.
Court of Appeal of Louisiana, First Circuit.
November 7, 1997.
Writ Denied February 13, 1998.
*18 Robert A. Liptak, Walker, for Plaintiff/Appellant, Robert James Ross.
Michael C. Smith, Baton Rouge, for Defendant/Appellee, Premier Imports.
Before LOTTINGER, C.J., CARTER, J., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
This is an appeal from a judgment granting a motion for involuntary dismissal of a suit in redhibition involving a 1988 Nissan 300ZX automobile.

FACTS
Plaintiff, Robert Ross ("Ross") visited defendant, Premier Imports ("Premier"), and became interested in purchasing a 1988 Nissan 300ZX. Ross was accompanied by his father, Carl Ross. On the Rosses' first visit to Premier, the vehicle was taken for a test drive. The car ran a little rough on the test drive, and the owner of Premier, Mark A. Karimi ("Karimi"), told the Rosses this was because the car had been "sitting up" for a while. According to Carl Ross, Karimi said the car may need a tune-up. On the same day as the test drive, Ross and his father took the car to a Nissan dealer in Baton Rouge to have it checked by a mechanic. The mechanic's evaluation of the car satisfied *19 Ross enough to buy it. The actual purchase of the Nissan 300ZX took place on Ross' second visit to Premier on August 1, 1994. Premier's original asking price was $6,995.00, but Ross ultimately paid $6,250.00 for the car.
To effect the transfer, Ross signed numerous documents, including one entitled "Bill of Sale," a copy of which is attached hereto as Appendix "A," and another one entitled "Motor Vehicle Warranty Waiver" ("the waiver"), a copy of which is attached hereto as Appendix "B." Immediately above Ross' signature on the Bill of Sale is a line for the date and a line which provides: "ACKNOWLEDGED Warranty waiver is attached to this document." The Bill of Sale also indicates that the vehicle is sold "AS IS." The Bill of Sale is notarized, although it does not contain the signatures of any witnesses. The waiver of warranty is attached to the Bill of Sale. The bold block letters on the waiver of warranty make it clear that the purchaser is waiving all warranty rights by signing the instrument. Additionally, above the bold block letters on the waiver appears the following handwritten notation: "[T]he car had been to the Royal Nissan and checked by they [sic] mechanics."
Ross does not dispute that the Bill of Sale referred to the waiver of warranty or that he did not read any of the documents before signing. However, it is Ross' contention that the waiver of warranty was not explained to him; thus, it is not effective under Louisiana law.
In addition, Ross contends that the car began giving him problems from the day he bought it. After one week, the car allegedly became inoperable and has not been used since.

PROCEDURAL BACKGROUND
On September 30, 1994, Ross filed suit against Premier and Karimi, individually and d/b/a Premier,[2] seeking a rescission of the sale due to redhibitory defects. Ross also sought damages, attorney's fees and costs.
Premier answered the petition on October 19, 1994, and asserted the waiver of warranty as an affirmative defense to Ross' suit. Subsequently, Premier moved for summary judgment on the basis of the waiver, which motion was denied by the trial court.
The trial commenced on January 25, 1996, at which time both Ross and his father testified that Ross was presented with a stack of documents by Karimi and told where to sign. Both Rosses testified that they were never told about the waiver of warranty. Mr. Ross, who was sitting on a couch in the same room in which his son was signing the appropriate documents, did not hear any explanation or other discussion about the waiver. Neither Ross nor his father read any of the documents despite the fact that both of them could read and write.[3]
At the conclusion of the Rosses' testimony, Premier moved for an involuntary dismissal. The trial court denied this motion because Ross had not finished presenting his evidence in the case. Consequently, the trial was continued until February 15, 1996. On this date, Ross' mechanic testified and Ross rested his case. Premier again moved for an involuntary dismissal, arguing that the waiver of warranty, which was signed by Ross, precluded plaintiff's recovery. Premier contends that the format of the waiver, with the use of bold block letters and placement of the emphasized waiver of warranty language directly above the buyer's signature line, was sufficient to meet the requirement that the waiver of warranty be brought to the purchaser's attention.
The trial court ruled that a waiver of warranty need not be verbally brought to a purchaser's attention to be effective. It further ruled that the Premier waiver of warranty met the requirements of Louisiana law to be effective, specifically finding that the format and language of the Premier waiver of warranty was sufficient to bring the waiver *20 to Ross' attention. However, the trial court did not dismiss the case because it was concerned with whether there was an error made by Ross in purchasing a vehicle that allegedly turned out to be useless, and whether such an error could vitiate Ross' consent to the sale. Instead, the trial court recessed the trial and ordered the parties to submit briefs on the vitiation of consent issue, after which time, Premier could continue with its defense if necessitated by the trial court's decision on the vitiation of consent issue.
In accordance with the trial court's order, Premier filed a memorandum on the vitiation of consent issue. In the memorandum, Premier restated the trial court's earlier ruling that the waiver was effective. Ross responded by filing a motion to strike those statements in Premier's memorandum that stated the trial court had ruled that the waiver was effective. It was Ross' contention that the trial court never ruled on the effectiveness of the waiver.
The parties returned to court on July 16, 1996, to argue the motion to strike and the pending motion for involuntary dismissal, and to complete the trial, if necessary. The trial court denied the motion to strike because it had already ruled that the waiver was effective. The trial court further concluded that there was no jurisprudence to support the vitiation of consent theory of recovery. Accordingly, the trial court granted Premier's motion for involuntary dismissal. A judgment dismissing Ross' suit with prejudice at his costs was signed on July 25, 1996. Ross appeals from this judgment raising as his sole assignment of error, the trial court's grant of Premier's motion for involuntary dismissal.

INVOLUNTARY DISMISSAL
LSA-C.C.P. art. 1672 B provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In a non-jury case, the appropriate standard for the trial court's determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence. In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to the plaintiff as is done when a motion for directed verdict is filed in a jury case. Unlike the motion for a directed verdict in a jury trial, a motion for involuntary dismissal pursuant to LSA-C.C.P. art. 1672 B requires a judge to evaluate the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion. In other words, on a motion for involuntary dismissal, the trial judge is only required to weigh and evaluate all of the evidence presented up to that point and grant a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. State, Department of Social Services Support Enforcement Services in Interest of Bordelon v. Guichard, 94-1795, pp. 6-7 (La.App. 1st Cir. 5/5/95), 655 So.2d 1371, 1376-77, writ denied, 95-1405 (La. 9/15/95), 660 So.2d 454.
Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Although petitioners are not entitled to any special inferences in their favor, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. State, Department of Social Services Support Enforcement Services in Interest of Bordelon v. Guichard, 655 So.2d at 1377. Great weight must be given to the factual conclusions arrived at by the trier of fact and reasonable inferences of fact should not be *21 disturbed absent a showing of manifest error. Martyniuk v. DL-Mud, Inc., 526 So.2d 846, 847 (La.App. 1st Cir.), writ denied, 531 So.2d 276 (La.1988).

REDHIBITION AND WAIVER OF WARRANTY
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders the thing either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice. LSA-C.C. art. 2520. To sustain a suit in redhibition, a purchaser must prove that: (1) the thing sold is absolutely useless for its intended purpose or its use is so inconvenient that had he known of the defect, he would never have purchased it; (2) the defect existed at the time of sale but was not apparent; and (3) the seller was given an opportunity to repair the defect. Burch v. Durham Pontiac Cadillac, Inc., 564 So.2d 380, 382 (La.App. 1st Cir.), writ denied, 569 So.2d 968 (La.1990).
The warranty created against redhibitory defects applies to the sale of used equipment, but it is not as extensive as in the sale of new equipment. However, what is required is that the equipment must operate reasonably well for a reasonable period of time. Burch v. Durham Pontiac Cadillac, Inc., 564 So.2d at 382-83; Sanders v. Sanders Tractor Company, Inc., 480 So.2d 913, 915 (La.App. 2nd Cir.1985).
A sale made "as is" is not a waiver of all warranties. The vendor is not relieved of the implied warranty under LSA-C.C. art. 2520 that the thing must be fit for the use for which it is intended. The "as is" stipulation, especially in a sale of a used thing, means that the thing is not warranted to be in perfect condition and free of all defects which prior usage and age may cause. Sanders v. Sanders Tractor Company, Inc., 480 So.2d at 916.
The seller can limit the implied warranty against redhibitory defects by declaring to the buyer the defects at the time of the sale, or the seller can otherwise limit his obligations as seller, providing he does so clearly and unambiguously. Hob's Refrigeration and Air Conditioning, Inc. v. Poche, 304 So.2d 326, 327 (La.1974); Rey v. Cuccia, 298 So.2d 840, 842 (La.1974); Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127, 1131 (La.App. 1st Cir.1992). In order to be effective, such waiver of warranty must satisfy three requirements: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and, (3) either be brought to the attention of the buyer or explained to him.[4]Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112, 117 (La.1973); Keaty v. Moss Motors, Inc., 93-1452, pp. 4-5 (La.App. 3rd Cir. 6/1/94), 638 So.2d 684, 687, writ denied, 94-2211 (La. 11/11/94), 644 So.2d 399.
In the instant case, there is no dispute that the waiver met the first two requirements. Rather, the issues are whether the trial court was correct in finding that a waiver of warranty does not have to be verbally brought to the attention of a purchaser and whether the Premier waiver of warranty was brought to Ross' attention. After a thorough review of the record, we find that the trial court did not err in concluding that a waiver of warranty does not have to be verbally brought to a purchaser's attention and that the language and format of the subject Bill of Sale and waiver of warranty were sufficient to bring the waiver to Ross' attention.
In Keaty, our brethren of the third circuit found that a waiver of warranty contained on the first page of a lease, which waiver appeared in block letters and was signed by an attorney, who was also the lessee, met the requirement of having been brought to the lessee's attention. Keaty v. Moss Motors, Inc., 638 So.2d at 687.
We agree with Keaty, and Ross has not cited, nor have we found, any jurisprudence requiring a waiver of warranty to be verbally brought to the attention of a purchaser. Moreover, the third requirement for an effective waiver of warranty is satisfied if the waiver was either explained to the purchaser *22 or brought to his attention. See Prince v. Paretti Pontiac Company, Inc., 281 So.2d at 117; Keaty v. Moss Motors, Inc., 638 So.2d at 687. While an explanation may necessarily require verbal communication, a verbal explanation is not necessarily required when something must simply be brought to a purchaser's attention. Thus, to be effective, it is not necessary for a waiver to be verbally brought to the attention of a purchaser if the facts demonstrate that the purchaser should have known of the existence of the waiver through presentation of the documents and the language and format of the waiver. See Keaty v. Moss Motors, Inc., 638 So.2d at 687.
As to the issue of whether Premier sufficiently brought the waiver of warranty to Ross' attention, we note that the waiver is clear and unambiguous and contains Ross' signature, which signature is also on the Bill of Sale. The motor vehicle warranty waiver has bold block letters immediately above the buyer's signature line clearly waiving any warranty whatsoever, and is signed by Ross. Ross, a high school graduate, was attending college at the time of the purchase and could read and write. At trial, he could decipher between the bold and non-bold print on the waiver from three to four feet away; thus, it is clear that the emphasized waiver of warranty language stood out on the waiver. The record in its entirety, supports a finding that the waiver of warranty was brought to Ross' attention, satisfying the third requirement to be an effective waiver of warranty. Accordingly, we conclude that plaintiff legally waived his warranty rights and that Premier was not liable for breach of implied warranties.

CONCLUSION
For the reasons expressed in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Ross.
AFFIRMED.
*23 
*24 
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Karimi was added as a defendant through a supplemental and amending petition.
[3] Ross was a high school graduate and was attending college when he purchased the car. Mr. Ross had two years of college education and was a manager of a sporting goods store at the time of the sale.
[4] These jurisprudential requirements were codified in LSA-C.C. art. 2548, as amended by La. Acts 1993, No. 841 § 1, effective January 1, 1995.