STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2018 CA 0907

FLORIDA GAS TRANSMISSION COMPANY, LLC

VERSUS

TEXAS BRINE COMPANY, LLC, ET AL.

Judgment Rendered: AUG 2 9 2019.

* * * * *

On Appeal from
The 23rd Judicial District Court,
Parish of Assumption, State of Louisiana
Trial Court No. 34316
The Honorable Thomas J. Kliebert Jr., Judge Presiding

* * * * *

<table>
<tr><td>Leopold Z. Sher<br>James M. Garner<br>Peter L. Hilbert Jr.<br>Jeffrey D. Kessler<br>New Orleans, Louisiana<br><br>Robert Ryland Percy III<br>Gonzales, Louisiana<br><br>Travis J. Turner<br>Gonzales, Louisiana</td><td>Attorneys for Appellant/Defendant,<br>Texas Brine Company, LLC</td></tr>
<tr><td>Glen E. Mercer<br>Kourtney Twenhafel<br>New Orleans, Louisiana</td><td>Attorneys for Appellee/Third-Party<br>Defendant,<br>Steadfast Insurance Company</td></tr>
<tr><td>Mary S. Johnson<br>Chad J. Mollere<br>Mandeville, Louisiana</td><td>Attorneys for Appellees/Third-Party<br>Defendants,<br>AIG Specialty Insurance Company,<br>Lexington Insurance Company, and<br>National Union Fire Insurance<br>Company of Pittsburgh, PA.</td></tr>
</table>

* * * * *

BEFORE: McDONALD, CRAIN, AND LANIER, JJ.

**CRAIN, J.**

Texas Brine Company, LLC, appeals a judgment dismissing its claims against Steadfast Insurance Company, AIG Specialty Insurance Company, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA., in their respective capacities as insurers of Adams Resources Exploration Company (collectively "insurers"). We affirm.

## FACTS AND PROCEDURAL HISTORY

This is one of several lawsuits arising out of a sinkhole in Assumption Parish that developed on or about August 3, 2012, following the collapse of the Oxy-Geismer #3 (OG3), a pressurized salt cavern in the Napoleonville Salt Dome. The OG3 was drilled by Texas Brine in 1982 on property owned by Occidental Chemical Corporation, then known as Hooker Chemical Corporation. Texas Brine operated the OG3 until 2011, when the cavern was plugged and abandoned.

Occidental owned an adjacent piece of property that was subject to an oil and gas lease granted to Colorado Crude (Colorado Crude lease). In 1986, Adams Resources, an assignee of the Colorado Crude lease, drilled an oil and gas well on that property, the Adams-Hooker No. 1 (AH1 well). Before it was drilled, Texas Brine approved the surface and bottom hole locations for the AH1 well. When completed, the well did not penetrate or otherwise contact the Napoleonville Salt Dome or the OG3 cavern. In May 1986, before any actual production from the AH1 reservoir, Adams Resources assigned its operating interest in the AH1 well to HECI Exploration Company, LLC. The well produced until it was permanently shut-in in 2001, approximately 11 years before the development of the sinkhole.

After the sinkhole appeared, Florida Gas Transmission Company sued Texas Brine, among other defendants, alleging Texas Brine's operation of the OG3 caused the collapse of the cavern and the resulting sinkhole, which damaged two of Florida Gas's pipelines. Texas Brine filed incidental demands against several

2

parties associated with the AH1 well, including Adams Resources and its insurers, alleging the drilling and operation of the well decreased the pressure in the AH1 reservoir, which purportedly damaged the adjacent salt dome wall, "encouraged" the leakage of brine from the OG3 cavern, and ultimately contributed to the collapse of the cavern and formation of the sinkhole. Asserting tort and contract claims, Texas Brine cited the following provision in the Colorado Crude lease: "Lessee shall diligently endeavor not to damage any salt formations which may exist upon the leased premises and shall pay for any actual damages which may occur from operations upon said premises."

The litigation proceeded to a "Phase 1: Liability" trial limited to the following issues: (1) the duties owed by the non-insurer parties, (2) whether any non-insurer parties breached the duty or duties owed, and (3) if one or more non-insurer parties breached a duty or duties, whether the actions or inactions of that party caused any legally cognizable damages to any claimant.[1] After Texas Brine rested its case, Adams Resources' insurers moved for an involuntary dismissal of Texas Brine's claims. The trial court deferred ruling on the motion until the completion of the trial, at which time the motion was re-urged and granted by the trial court. In a judgment signed on November 11, 2017, the trial court dismissed Texas Brine's claims against Adams Resources' insurers with prejudice. Texas Brine appeals.

## DISCUSSION

In an action tried by the court without a jury, any party may move for involuntary dismissal at the close of the plaintiff's case on the ground that upon the facts and law, the plaintiff has shown no right to relief. *See* La. Code Civ. Pro. art.

---

[1] Adams Resources filed bankruptcy in 2017 and did not participate in the trial. *See In re Adams Resources Exploration Corporation*, 17-10866, 2017WL5479425 (Bankr. D. Del. 5/24/17). The bankruptcy stay was lifted to allow the claims against Adams Resources' insurers, which were not released by the bankruptcy, to proceed. *See* La. R.S. 22:1269A and B.

1672B.[2] The trial court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence. *Id.* Unlike a motion for directed verdict in a jury trial, a motion for involuntary dismissal requires a judge to weigh and evaluate the evidence up to that point, without any special inferences in favor of the opponent to the motion, and ascertain whether the plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence. *See Taylor v. Tommie's Gaming*, 04-2254 (La. 5/24/05), 902 So. 2d 380, 384; *Kennedy v. Louisiana Maintenance Specialties, Inc.*, 07-0506, 2007WL4555444, p. 3 (La. App. 1 Cir. 12/28/07); *Ross v. Premier Imports*, 96-2577 (La. App. 1 Cir. 11/7/97), 704 So. 2d 17, 20, *writ denied*, 97-3035 (La. 2/13/98), 709 So. 2d 750. However, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. *Kennedy*, 2007WL4555444 at p. 3; *Ross*, 704 So. 2d at 20.

The trial court's grant of an involuntary dismissal is subject to the manifest error standard of review. *Pontchartrain Natural Gas System v. Texas Brine Company, LLC*, 18-0631 (La. App. 1 Cir. 7/3/19), ____ So. 3d ____, ____ (2019WL2865136, p. 3); *Broussard v. Voorhies*, 06-2306 (La. App. 1 Cir. 9/19/07), 970 So. 2d 1038, 1041, *writ denied*, 07-2052 (La. 12/14/07), 970 So. 2d 535. To reverse, the reviewing court must find the trial court's finding has no reasonable factual basis and is clearly wrong. *See Pontchartrain Natural Gas*, ____ So. 3d at ____ (2019WL2865136, p. 3); *Broussard*, 970 So. 2d at 1042; *see also Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110, 1116. The issue to

---

[2] The word "plaintiff" in Louisiana Code of Civil Procedure article 1672B includes a plaintiff in an incidental demand. *See* La. Code Civ. Pro. art. 1040.

4

be resolved on review is not whether the factfinder was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Hayes*, 193 So. 3d at 1116; *Greene v. Succession of Alvarado*, 15-1960 (La. App. 1 Cir. 12/27/16), 210 So. 3d 321, 333.

Texas Brine contends the record does not reasonably support the trial court's conclusion that Adams Resources is not liable to Texas Brine. According to Texas Brine, the evidence established Adams Resources was partly responsible for the depressurization of the AH1 reservoir, which weakened the salt dome wall, "encouraged" the leakage of brine from the OG3 cavern, and ultimately contributed to the collapse of the OG3 cavern and the appearance of the sinkhole. Texas Brine does not dispute that Adams Resources never operated the AH1 well when it was actually producing from the AH1 reservoir. Nevertheless, Texas Brine contends Adams Resources' "erroneous assumption" that the reservoir was water driven, rather than depletion driven, was a contributing factor to the sinkhole. In a water driven reservoir, the internal pressure in the reservoir is maintained by water expanding in the aquifer as hydrocarbons are removed from the reservoir. In a depletion driven reservoir, the reservoir's pressure will decline as hydrocarbons are removed.

The insurers counter that Adams Resources had no obligation, contractual or otherwise, to determine whether the AH1 reservoir was water driven or depletion driven. The Colorado Crude lease makes no mention of the reservoir's drive mechanism and does not expressly require any monitoring of bottom-hole pressures. Adams Resources also relies on testimony of Michael Veazey, Texas Brine's petroleum engineering expert, who testified that Adams Resources' belief, when the well was drilled, that the reservoir was water driven "was a reasonable assumption" at the time. The drive mechanism of the reservoir, according to Veazey, was determinable only by additional measurements and calculations "in

5

the early '90's," which was years after Adams Resources ended its operation of the well. Veazey confirmed that no industry standard requires well operators to conduct bottom-hole pressure measurements at any specific intervals. As to the depletion of the AH1 reservoir, the insurers point out Adams Resources was not the operator of the well during production from the reservoir. The insurers also rely on the trial court's involuntary dismissal of the claims against Browning Oil Company, Inc., a long-term operator of the well, as a rejection of any assertion the well should have been re-pressurized.

In its reply brief, Texas Brine emphasizes its claim against Adams Resources under the Colorado Crude lease, arguing Adams Resources had an obligation therein "not to damage any salt formation" and "[to] pay for any actual damages which may occur from operations upon said leased premises." Establishing a breach of those contractual obligations, Texas Brine argues, does not require evidence of conduct falling below a reasonable standard of care or a violation of an industry standard. Rather, according to Texas Brine, Adams Resources is contractually liable because it "fail[ed] to take any steps to detect or correct its erroneous assumption regarding the reservoir," which "led to the depressurization of the AH1 reservoir [and] created a pressure differential that damaged the salt formations." (Emphasis omitted.)

Regardless of whether its claims are based in tort or contract, Texas Brine's evidentiary burden at trial required proof by a preponderance of the evidence that Adams Resources' actions or inactions caused damage to Texas Brine. *See* La. Civ. Code. art. 1994; *Hayes*, 193 So. 3d at 1115. Causation is an essential element of both contract and tort claims. *Id.* Whether a defendant's actions caused the plaintiff's damages is a question of fact, which should not be reversed on appeal absent manifest error. *Hayes*, 193 So. 3d at 1115.

6

For causation, Texas Brine maintains Adams Resources' "erroneous assumption" the reservoir was water driven "initiated a chain of events that lead to the depressurization of the AH1 reservoir." Texas Brine elaborates:

> But for Adams' erroneous assumption that the AH1 reservoir was water driven and its failure to detect and correct this error, the depressurization of the AH1 reservoir could have been prevented and the sinkhole would not have occurred.

Texas Brine relies on testimony from two of its experts, Robert Thoms, an expert in the behavior of salt, the stability of salt caverns, and the formation of sinkholes; and Dr. Neal Nagel, an expert in geomechanics. However, their testimony did not address what effect, if any, Adams Resources' initial determination of the reservoir's drive mechanism had on operational decisions for the AH1 well and reservoir. Rather, their testimony focused on the theory that the sinkhole formed when brine leaked from the OG3 cavern and migrated into the lower-pressured AH1 reservoir. Neither witness suggested the depressurization of the AH1 reservoir *was caused by* Adams Resources' initial belief the reservoir was water driven. In other words, neither witness opined that subsequent operators, if informed the AH1 reservoir was depletion driven rather that water driven, would or should have re-pressurized the reservoir or otherwise attempted to maintain its pressure during production. The evidence indicates the opposite conclusion.

The depressurization of an oil and gas reservoir near a salt dome is not uncommon. No state regulation requires pressure maintenance in a depleted reservoir. In his 50-year career, Veazey had never recommended or performed a pressure maintenance operation of a reservoir for the purpose of protecting a brine salt cavern. Further, while Adams Resources initially believed the AH1 well was water driven, tests of the bottom hole pressure in 1986, 1999, and 2000 indicated the reservoir was depletion driven. At that point, the drive mechanism was known, but that information did not prompt any change in the well operation to re-

7

pressurize the reservoir. The record offers no support for Texas Brine's assertion that the depressurization of the AH1 reservoir would not have occurred "but for" Adams Resources' initial characterization of the reservoir as water driven. That determination, even when later revealed to be incorrect, had no apparent effect on operational decisions regarding pressure maintenance in the reservoir.

We further note that another panel of this court recently affirmed the trial court's involuntary dismissal of Texas Brine's claims against Browning Oil. *See Pontchartrain Natural Gas System*, ____ So. 3d at ____ (2019WL2865136, p. 6). There, Texas Brine similarly argued the depressurization of the AH1 reservoir by production from the AH1 well contributed to the collapse of the OG3 cavern and the formation of the sinkhole. *Pontchartrain Natural Gas System*, ____ So. 3d at ____ (2019WL2865136, p. 5). Finding no manifest error in the trial court's dismissal of the claims against Browning Oil, the *Pontchartrain* court concluded, "Our review of the totality of the evidence presented at trial reveals that Browning's operations played absolutely no role in any of the causative factors for the development of the sinkhole and the damage that resulted." *Id.*

For similar reasons, we likewise find the present record reasonably supports the conclusion Adams Resources' operations were not a causative factor for the development of the sinkhole and the resulting damages. *See Hayes*, 193 So. 3d at 1149-50; *Pontchartrain Natural Gas System*, ____ So. 3d at ____ (2019WL2865136, pp. 5-6). The trial court's involuntary dismissal of Texas Brine's claims against the insurers of Adams Resources is not manifestly erroneous. This assignment of error is without merit.[3]

## CONCLUSION

---

[3] Texas Brine also assigns as error the trial court's dismissal of Texas Brine's claims against the insurers of Adams Resources based on Louisiana law in effect before 1996. For the reasons provided in *Pontchartrain Natural Gas System*, ___ So. 3d at ____ (2019WL2865136, p. 5), this assignment of error is without merit.

The judgment signed on November 11, 2017, dismissing Texas Brine's claims against the insurers of Adams Resources is affirmed. All costs of this appeal are assessed to Texas Brine.

**AFFIRMED.**[4]

---

[4]     Texas Brine filed a motion to cite the appellate record in 2018 CA 0842, which we grant. Occidental filed a motion to consolidate this appeal with eight other appeals arising out of the liability trial. As to this appeal, that motion is denied.