**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2022 CA 1369**

ROGER A. VITTER

VERSUS

SAMUEL ALLEN BLAIZE AND CHERYL HARRIS BLAIZE

Judgment Rendered: **SEP 2 0 2023**

* * * * * *

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2016-10221
Honorable Richard A. Swartz, Judge Presiding

* * * * * *

Ross F. Lagarde                    Counsel for Plaintiff/Appellant
Jeffrey G. Lagarde                 Roger A. Vitter
Alexander L.H. Reed
Slidell, Louisiana


René Paul Frederick                Counsel for Defendants/Appellees
Jeanne M. Mauldin                  Samuel Allen Blaize and
Covington, Louisiana               Cheryl Harris Blaize

* * * * * *

**BEFORE:  McCLENDON, HOLDRIDGE, AND GREENE, JJ.**

Holdridge J. concurs

**McCLENDON, J.**

In this redhibition case, the plaintiff appeals the trial court's judgment in favor of the defendants, dismissing all of his claims with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On June 18, 2014, Roger A. Vitter purchased a condominium located in Mandeville, Louisiana, from Samuel Allen Blaize and Cheryl Harris Blaize. Mr. Vitter agreed to purchase the property "as is," expressly waiving any rights in redhibition. In 2015, Mr. Vitter noticed cracks in the walls, buckling of sheetrock, and doors that would not close.

On January 14, 2016, Mr. Vitter filed a Petition in Redhibition and Fraud against Mr. and Mrs. Blaize, alleging that they misrepresented the condition of the foundation of the condominium to him and failed to disclose a known foundation defect. The trial court held a bench trial on March 8 and 9, 2022. After taking the matter under advisement, on August 10, 2022, the trial court signed a Judgment, and separate Reasons for Judgment, in favor of the Blaizes, finding that the evidence presented at trial was insufficient to establish that the foundation was defective when Mr. Vitter purchased the property in 2014. The trial court specifically found that Mr. Vitter failed to meet his burden of proof on his claim that the Blaizes failed to disclose a known foundation defect or misrepresented the condition of the foundation in order to obtain an unjust advantage. Accordingly, the trial court dismissed with prejudice all claims of Mr. Vitter against the Blaizes, and Mr. Vitter appealed.

## DISCUSSION

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders the thing either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice. LSA-C.C. art. 2520; **Ross v. Premier Imports**, 96-2577 (La.App. 1 Cir. 11/7/97), 704 So.2d 17, 21, writ denied, 97-3035 (La. 2/13/98), 709 So.2d 750. To prevail in a claim for redhibition, a purchaser must prove that: (1) the thing sold is absolutely useless for its intended purpose or its use is so inconvenient that had he known of the defect, he would never have purchased it; (2) the defect existed at the time of the

2

sale, but was not apparent; and (3) the seller was given an opportunity to repair the defect. **Ross**, 704 So.2d at 21.

The existence of a redhibitory defect is a question of fact, which cannot be disturbed on appeal unless the record as a whole establishes that the finding is manifestly erroneous or clearly wrong. **Hoffmann v. B & G, Inc.**, 2016-1001 (La.App. 1 Cir. 2/21/17), 215 So.3d 273, 277. Thus, an appellate court may not set aside a factfinder's finding of fact in the absence of manifest error or unless it is clearly wrong. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. **Ferrell v. Fireman's Fund Ins. Co.**, 94-1252 (La. 2/20/95), 650 So.2d 742, 745-46.

The warranty against redhibitory defects is premised on LSA-C.C. art. 2520, *et seq.* Article 2520 provides:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

The extent of a seller's liability to a buyer for breaching this warranty depends on whether the seller knew, or did not know, of the defect. **Minton v. Acosta**, 2021-1180 (La.App. 1 Cir. 6/3/22), 343 So.3d 721, 726. The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for apparent defects that should have been discovered by a reasonably prudent buyer of such things. LSA-C.C. art. 2521; **Minton**, 343 So.3d at 726. However, a seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses

3

occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. LSA-C.C. art. 2545.

A seller and buyer may agree to exclude the warranty against redhibitory defects; however, the terms of the exclusion must be clear and unambiguous and must be brought to the attention of the buyer. LSA-C.C. art. 2548. The Act of Cash Sale signed by Mr. Vitter contained language that the sale was "AS IS, WHERE IS," and "WITH ALL FAULTS" and was sufficient to waive redhibition.[1] However, Mr. Vitter alleges that his consent to this waiver was vitiated by the Blaizes' fraud.

While an exclusion or limitation of the warranty against redhibitory defects is usually effective, LSA-C.C. art. 2548 further provides that a buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have. Under this article, an otherwise effective exclusion or limitation of the warranty against redhibitory defects is not effective if the seller commits fraud, as defined in the Civil Code, upon the buyer. **Shelton v. Standard/700 Associates**, 2001-587 (La. 10/16/01), 798 So.2d 60, 64. Thus, Mr. Vitter can only obtain relief from the redhibition waiver if he can show fraud in the inducement of the contract.

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. LSA-C.C. art. 1953. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. LSA-C.C. art. 1954. The fraud alleged by Mr. Vitter was the Blaizes' failure to disclose knowledge of a foundation defect prior to the sale.

In his sole assignment of error on appeal, Mr. Vitter contends that the trial court erred in determining that he failed to meet his burden of proof on his fraud claim.

---

[1] The Act of Cash Sale provided, in part:

> Vendor and Purchaser covenant and agree that the Property and all buildings, improvements and component parts thereon, ... are conveyed by Vendor and accepted by Purchaser "AS IS, WHERE IS," and "WITH ALL FAULTS," without any warranty of any kind whatsoever, ... and without regard to the presence of apparent or hidden defects and with purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by the reason of any such defects. ... Without limiting the foregoing, ... purchaser expressly waives any warranty as to ... foundation."

4

Particularly, he asserts that the Blaizes intentionally did not disclose their knowledge of the structural problems regarding the foundation, including the recommendation by Cable Lock Foundation Repair, Inc. (Cable Lock) for the installation of additional pilings. Mr. Vitter also argues that the Blaizes knowingly and intentionally misrepresented their knowledge of the foundation in the disclosure form executed prior to the sale of the property. According to Mr. Vitter, had he known of any foundation issue he would not have purchased the condominium, and the intentional silence by the Blaizes was fraudulent, which he proved at trial.

The parties stipulated to the introduction of several exhibits and presented witness testimony at trial. The evidence and testimony established that in 2004, Cable Lock installed fourteen pilings along the right exterior wall of the home and in the garage area for a previous owner. Cable Lock's foundation work included a lifetime foundation warranty fully transferable to all subsequent owners of the condominium. The Blaizes purchased the home in 2009. Prior to their purchase, the Blaizes were provided inspection and engineering reports from 2004, 2006, and 2008, which included detailed information regarding the 2004 Cable Lock repairs and subsequent evaluations of the foundation.

In 2013, the Blaizes decided to list the condominium for sale. Because of the cracks in the side wall above where the prior foundation work had been performed and the bowing of an interior wall, Mrs. Blaize called Cable Lock to make an appointment for an inspection, stating that she was aware of the lifetime transferable warranty the Blaizes had in connection with the 2004 repairs.

In August of 2013, Darren Averitt, a twenty-five-year Cable Lock employee, met Mrs. Blaize at the condominium to evaluate the foundation. Mrs. Blaize testified that she wanted "to know if these cracks are a problem." Mr. Averitt took elevation readings for the entire home and advised Mrs. Blaize that the right rear corner of the home was low. According to Mrs. Blaize, Mr. Averitt told her that the cracks were not a problem and stated, "we can fix it if you would like us to." She testified that Mr. Averitt never mentioned anything about pilings, and he did not give Mrs. Blaize a quote or drawings of any proposed work. Mrs. Blaize further testified that she told Mr. Averitt that the right

5

rear corner was the same as when they purchased the condominium and had not caused any problems. The Blaizes chose not to raise the right rear corner of the condominium at that time.

When the property was listed, the Blaizes acknowledged on the property disclosure form given to Mr. Vitter that the foundation had undergone previous repairs. The Blaizes also checked "NK" for "no knowledge" to the question on the form asking if there were any defects in the foundation. Mr. Blaize testified that he gave to their real estate agent, Gregg Tepper, the historical engineering reports from 2004, 2006, and 2008 regarding the foundation, which indicated that the foundation had stabilized since the repairs in 2004. Mr. Tepper testified that he was one hundred percent confident that he gave the reports to Mr. Vitter's real estate agent.

After his purchase of the property, beginning in the winter and spring of 2015, Mr. Vitter noticed issues in the condominium. He stated that he saw significant cracks in the walls, buckling of sheetrock, and doors that would not close. Recalling the lifetime warranty for the work previously performed by Cable Lock, Mr. Vitter called Cable Lock for someone to come out and evaluate the property.

Travis Hartley, a Cable Lock employee, performed a remeasure of the foundation in September of 2015. During the course of the inspection, Mr. Vitter learned for the first time that Cable Lock came out two years earlier, in August of 2013, to evaluate the property for the Blaizes. Mr. Hartley testified that the back area of the condominium had experienced a major "heave" sometime between August of 2013 and September of 2015. Mr. Hartley observed a three-and-a-half-inch heave, which indicated a problem with saturation of the soil. Mr. Hartley also stated that Cable Lock pilings only prevent settling and do not prevent a heave.

John Catalanotto, a professional civil engineer, who testified as an expert for the Blaizes, stated that he analyzed Cable Lock's measurements of the condominium from March of 2005, April of 2005, December of 2005, August of 2013, and September of 2015. Mr. Catalanotto testified that from March of 2005 to August of 2013 there was some slight movement in the foundation, but it was stable, and any movement during that period was within normal limits. Mr. Averitt also testified at the trial that all

6

foundations move over time within certain normal limits and that from 2005 to 2013 there had not been a lot of movement in the foundation.

Mr. Catalanotto further testified, however, that between August of 2013 and September of 2015 there was a rise in the foundation. He stated that there was a heave in the right rear corner in the area where Cable Lock had made its repairs. It was Mr. Catalanotto's opinion that excessive rainfall in April of 2015, coupled with the clay soils under the foundation, caused the heave. Further, he opined that, from an engineering perspective, the foundation was not defective in August of 2013 and that the current condition of the foundation does not rise to the level of a defect.

The trial court found that there was insufficient evidence to establish that the foundation was defective when Mr. Vitter purchased the condominium in 2014. The trial court also determined that upon listing the condominium for sale, Mr. Blaize gave his real estate agent, for the purpose of disclosing all relevant information, copies of the documents regarding the foundation given to him when he purchased the condominium. The trial court further found that Mr. Vitter received a property disclosure form executed by the Blaizes that clearly indicated prior foundation repairs and was marked "No knowledge" in response to the question as to whether there were any defects regarding the foundation. Based on these facts, the trial court ruled that Mr. Vitter had not proven that the Blaizes failed to disclose a known foundation defect in order to obtain an unjust advantage. Accordingly, the trial court rendered judgment in favor of the defendants and dismissed all of Mr. Vitter's claims against them.

On our review, we find no manifest error by the trial court. Although Mr. Vitter argues that the Blaizes intentionally failed to disclose their knowledge of the foundation's structural problems or of Cable Lock's recommendation to install additional pilings, the record provides a reasonable basis for the trial court's conclusion that the Blaizes had no knowledge of a redhibitory defect in the foundation at the time of the sale of the condominium to Mr. Vitter. Mrs. Blaize testified that Mr. Averitt told her that the measurements he took in August of 2013 "are really no problem." When Mr. Averitt informed Mrs. Blaize that the back right corner of the condominium was low, Mrs. Blaize testified that he did not tell her that she had to fix it, and she never had a conversation

7

about pilings. The Blaizes specifically stated that there had been previous repairs to the foundation in their disclosure form, but represented that they had no knowledge of a current defect in the foundation.[2] Moreover, the trial court was presented with expert testimony that the foundation issues were the result of a heave of the foundation rather than a settling of the foundation and that this heave occurred in 2015 after the sale.

At trial, the factfinder is charged with assessing the credibility of the witnesses and is free to accept or reject, in whole or in part, the testimony of any witness. **Muse v. Louisiana Department of Public Safety and Corrections, Office of Probation and Parole,** 2022-0458 (La.App. 1 Cir. 11/4/22), 355 So.3d 620, 628 n.13. Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Further, when presented with two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Where the factfinder's conclusions are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. **Kott v. Kott,** 2020-0873 (La.App. 1 Cir. 4/16/21), 324 So.3d 165, 171-72.

We find that the trial court's factual findings are reasonable in light of the record viewed in its entirety. Even were we to have weighed the evidence differently, the trial court was not clearly wrong in finding the lack of a redhibitory defect in the foundation of the condominium when Mr. Vitter purchased the property.

## CONCLUSION

Considering the above, we affirm the August 10, 2022 judgment of the trial court in favor of the defendants, Samuel Allen Blaize and Cheryl Harris Blaize. All costs of this appeal are assessed to the plaintiff, Roger A. Vitter.

**AFFIRMED.**

---

[2] Additionally, knowing that the foundation had been previously repaired, Mr. Vitter could have investigated further prior to the sale, but chose not to do so.

8